HAEJI HONG, ATTORNEY #198503
TRIAL ATTORNEY
OFFICE OF THE UNITED STATES TRUSTEE
880 Front Street, Suite 3230
San Diego, CA 92101
(619) 557-5013

Attorney for
TIFFANY L. CARROLL
ACTING UNITED STATES TRUSTEE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA

In re:

CASHCALL, INC..

Debtor-in-Possession.

) Case No.: 26-03102-JBM11
)
) UNITED STATES TRUSTEE'S
) OMNIBUS OPPOSITION TO
) DEBTOR'S FIRST DAY MOTIONS
)
) Date:
) Time:
) Dept:  Two (2)
) Judge: J. Barrett Marum
)

On or about July 20, 2026, CashCall, Inc., the Debtor-in-Possession (the "Debtor"), filed various First Day Motions (Docket Nos. 5, 7, 8, and 9) with Supporting Declarations (Docket Nos. 3, 4, and 6).  The Acting United States Trustee (the "United States Trustee" or "UST") alerted the Court's law clerk on July 21, 2026 and indicated that the United States Trustee opposes some of the First Day Motions.

## 1.    Proof of Service of First Day Motions

The United States Trustee was served by email with all of the First Day Motions and Supporting Declarations.  However, it is unclear from the docket who else has been served with all of the First Day Motions and the accompanying Declarations.  There appears to be no proof of service filed with the Court that confirms that the Debtor served all creditors (list of 20 largest creditors discloses

- 1 -

CASHCALL, INC.: CASE NO. 26-03102-JBM11
OMNIBUS OPPOSITION TO FIRST DAY MOTIONS

eight creditors only) and any other affected parties (such as the Harmony Public Schools as the affected landlord of the lease proposed to be rejected) all of the First Day Motions. **<u>Without the confirmation that all creditors and affected parties have been served with the First Day Motions to adequately review them, the United States Trustee requests that the Court not enter any order approving any of the First Day Motions.</u>**

**2.     First Day Motion for an Order Extending Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs Filed as Docket No. 9**

The United States Trustee has no objection to requested relief to extend the deadline to file Schedules and Statement of Financial Affairs by August 19, 2026.

**3.     First Day Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Using Its Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms; (II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief Filed as Docket No. 7 ("Cash Management Motion")**

The Debtor has four bank accounts that are not in an authorized depository, and the Debtor proposes to keep all four bank accounts without transferring any into Debtor-in-Possession ("DIP") accounts.   The Debtor also requests to continue utilizing an American Express credit card.

The Debtor is not operating.  *See* Declaration of J. Paul Reddam ("Reddam Decl."), Dkt No. 3, ¶ 12-13.  The Debtor has no employees and is no longer making any new loans.  *Id.*  The Debtor has a $1.5 million loan portfolio that it is collecting from various borrowers.  *See* Declaration of Leslie Gladstone ("Gladstone Decl."), Dkt No. 4, ¶15 and Declaration of Matthew Dundon ("Dundon Decl."), Dkt No. 6, ¶9.

The United States Trustee proposes that the two Collection Accounts (as defined in the Cash Management Motion) could remain as is but that all payments must be swept daily into DIP bank accounts. But the Debtor should set up DIP bank accounts for the Operating Account (as defined in the Cash Management Motion) and the Funding Account (as defined in the Cash Management Motion).

The Debtor admitted that it was not creating new loans.  There is no reason why the Funding Account cannot be a DIP account.  Similarly, the Debtor has very limited operations.  Assuming that the requested loan is funded into the Operating Account, there is no reason why this cannot be a DIP account.  The proposed loan (as described below) will be over the FDIC limit.  And it is not clear that the combined total amount from the four bank accounts will be at or below the FDIC limit on daily basis.  DIP accounts provide additional collateral, and the authorized depositories report directly to the United States Trustee's Office.  Thus, it is crucial that where possible, that the Debtor maintain funds in DIP accounts.  And in this case, the United States Trustee recognizes potential disruption in collecting from the existing borrowers if the Collection Accounts were changed and proposes that funds simply be swept into DIP accounts daily as an acceptable solution as long as the funds in the Collection Accounts at any time do not exceed the FDIC limit.  For other accounts, they must be transferred to DIP accounts.

Finally, continued use of the American Express card constitutes borrowing without an appropriate court order.  There is no reason why expenses cannot be paid by check through a DIP account.  To the extent any pre-petition debt exists on American Express card, it should not be paid before other pre-existing debt and it should be listed.  The United States Trustee notes that American Express is not one of the listed creditors filed with the Petition.

**4.     First Day Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Obtain Postpetition Financing  and (B) Use Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing Filed as Docket No. 5 ("DIP Financing Motion")**

The DIP Financing Motion requests approval of a revolving credit in total amount of $3,995,000 with $1,300,000 to be available immediately from a related, insider entity Absolutely Zero Corporation ("Lender").  Lender is owned by the same sole shareholder of the debtor, J. Paul Reddam, Dkt No. 5, pg 1, lines 20-21, and is an insider according to the Debtor.  Dkt No. 5-3, pg 2.  According to the

Debtor, the only assets of the Debtor are(1) a $1.5 million loan portfolio, Dundon Decl., ⁋6, and (2) the estate's fraudulent transfer claim against the sole shareholder of the Debtor, John Paul Reddam. *Id.*, ⁋9.  The DIP Financing Motion also represents that the "Debtor has no substantial assets to act as collateral," Dkt No. 5, pg 13, lines 11-12, and thus justifies superpriority claims and granting a lien on all causes of actions under 11 U.S.C. §§ 544, 545, 547, 548, and 549.  Dkt No. 5, pg 5-7, and 12-13.  There are several issues with the DIP Financing Motion.

First, despite the tone of urgency, the Debtor explained that it is not operating.  There are no employees.  The Debtor failed to adequately explain why this DIP Financing Motion must be heard on an emergency basis as a First Day Motion when it is not currently in operation.

Second, the Debtor is proposing to borrow **more** than the amount of assets it has to fund this chapter 11 case.  There is no dollar figure assigned to the estate's fraudulent transfer claim against the Debtor's sole shareholder, Mr. Reddam.  Based on the terms of the DIP Financing Motion of granting a lien and superpriority claims to Lender, which is also controlled by Mr. Reddam, it seems highly unlikely that the Debtor will pursue the fraudulent transfer claim.  That leaves a $1.5 million loan portfolio as the only tangible asset of this Debtor.  It seems highly unreasonable to allow the Debtor to create more debts just to proceed in this chapter 11 bankruptcy case.  "A debtor's use of credit obtained through a priming lien must be likely to benefit the estate and improve the debtor's ability to reorganize." *In re Olde Block Owner, LLC*, 448 B.R. 482, 493 (Bankr.N.D.Ill. 2011).  The DIP Financing Motion fails to show how obtaining credit that is **more** than all of its assets would benefit the estate and improve the ability to reorganize.

Third, even if the Court could overlook the practical unreasonableness of allowing the Debtor to incur more debts than its own assets, the DIP Financing Motion failed to set forth how this transaction meets the heightened standard where the lender is an insider.  When a lender is an insider, the business judgment rule

- 4 -

does not apply. *In re Spac Recovery Co.*, 676 B.R. 260, 273 (Bankr.S.D.N.Y. 2026). Instead, the Debtor and insider lender must demonstrate that the transaction is objectively fair, procedurally and substantively. *Id.* There must be (1) fair dealing by reviewing how the transaction was timed, started, structured, negotiated, disclosed and approved by directors and (2) fair price by reviewing factors such as assets, market value, earnings, future prospects, and any other elements affecting the value of a company. *Id.* at 274 and 276. Despite admitting that this is an insider loan, the DIP Financing Motion fails to show that this heightened standard is met. And in fact, the proposed loan amount fails to objectively meet the fair pricing standard because the total proposed revolving credit of $3,995,000 is more than the assets of this Debtor. *See id.* at 277 (finding that $500,000 facility is modest size compared to the Debtor's asserted claim valued at $53.7 million at Sch A/B). Even the proposed immediate, intermediate credit amount of $1.3 million would be unreasonable because it's not modest in size compared to the assets of this Debtor. Exhibit D to the DIP Financing Motion indicates that after 13 weeks, the Debtor would have spent $1,950,000 in DIP financing, of which $1,321,156 would be spent solely to pay for chapter 11 professionals, DIP interest, Lender's attorney, and UST quarterly fees. Within three months, the Debtor have incurred more debt than its tangible asset. This is not fair pricing. Furthermore, fair dealing does not appear to be met. There is no evidence that the Debtor actually approached any other entities for credit or loan. None of the declarations indicate that there were any concrete actions taken to find alternative lenders with different terms before settling on the terms set forth in the DIP Financing Motion with Lender. Thus, it appears that the DIP Financing Motion fails both prongs of the heightened standard.

Fourth, the United States Trustee objects to inclusion of the following terms:

1) Debtor's reimbursement of Lender's reasonable attorney fees. This is an insider transaction, and the Debtor admits that Mr. Reddam controls both

- 5 -

the Lender and the Debtor.  While payment of Lender's attorney fees may be a standard loan term, this is not a standard loan.  The Lender can directly control its attorney fees and expenses and pay for its own fees and costs for this transaction.

2) Lien of all actions.  As Mr. Dundon's declaration indicates, one of the assets is fraudulent conveyance action against the insider, Mr. Reddam. It is unreasonable to allow the Lender to place liens on transfer actions under §§ 542 et al.  The United States Trustee is diligently working on appointing an Official Committee of Unsecured Creditors ("OCC") in this case.  The OCC would be the only party with any incentive to pursue such asset on behalf of the estate.  The asset that could be recovered for the unsecured creditors should not be encumbered.

3) Carve out of Chapter 11 professionals and OCC fees.  The DIP Financing Motion carves out $250,000 for the Debtor and its Professionals or officers but only $10,000 to OCC.  There is no OCC counsel who can represent OCC for such meager amount.  It would be more equitable to allow $125,000 to Debtor's Professionals and its officers and $125,000 to OCC and its professionals.  After all, the Debtor is not operating.  It should not need $250,000 devoted solely for the Debtor's professionals.

Fifth, the DIP Financing Motion does not attach a signed agreement but an unsigned term agreement as Exhibit C.  It's not clear that this complies with Federal Rule of Bankruptcy Procedure ("Rule") 4001(c)(1)(A).

Finally, the DIP Financing Motion requests use of cash collateral, to the extent such liens exist.  The Debtor does not have any secured debt.  Reddam Decl, Dkt No. 3, ¶14.  If the Debtor is aware of any party holding secured debt that may assert cash collateral, such party must be served.  It's not clear why this request is necessary.

- 6 -

CASHCALL, INC.: CASE NO. 26-03102-JBM11
OMNIBUS OPPOSITION TO FIRST DAY MOTIONS

**5.      Emergency First Day Motion for an Order (I) Authorizing (A) the Rejection of an Unexpired Lease; (B) Abandonment of Personal Property, If Any, and (II) Granting Related Relief Filed as Docket No. 8 ("Lease Motion")**

The United States Trustee takes no position on the Lease Motion but notes that it is not clear whether the affected party was served with the Lease Motion.

**6.      OCC Appointment**

As indicated, the United States Trustee is diligently working on appointing an OCC in this case.  To the extent such OCC is appointed prior to the Court's adjudication of First Day Motions, the United States Trustee would request that the Court allow the OCC time to review and file any pleadings.

WHEREFORE, the United States Trustee files this Omnibus Opposition and requests that the Court set a hearing.

Respectfully submitted,

TIFFANY L. CARROLL
ACTING UNITED STATES TRUSTEE

Dated: July 22, 2026                    By:   /s/ Haeji Hong
                                                      Haeji Hong,
                                                      Attorney for the Acting United States
                                                      Trustee

- 7 -

CASHCALL, INC.: CASE NO. 26-03102-JBM11
OMNIBUS OPPOSITION TO FIRST DAY MOTIONS