# Exhibit A

**DIP FINANCING FOR CASHCALL, INC.**

**Borrower:**  CashCall, Inc. (the **"Debtor"**).

**Amount and Type of Facility:**  Cash Collateral Usage: The Debtor believes that no person or entity has a lien on its cash, but to the extent any person or entity has a validly perfected pre-petition lien, the Debtor anticipates continuing to use cash collateral.

DIP Facility: Notwithstanding the foregoing, because the use of cash collateral alone is expected to be insufficient to meet the Debtor's immediate post-petition liquidity needs, the DIP Lender (as defined below) shall make available to the Debtor, as applicable, a revolving credit facility in the aggregate principal amount of $3,995,000, (the "DIP Facility"), of which $1,300,000 will be made available upon the entry of the Interim Order with the balance to be made available upon entry of the Final Order, in each case consistent with and to the extent required under the Budget.

The DIP Lender has no pre-petition claims against the Debtor.

The Debtor will be liable for all loans, advances, debts, liabilities and obligations, for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable), owing by Debtor to DIP Lender, and all covenants and duties regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any note, agreement or other instrument, arising under the DIP Facility, including all principal, interest (including all interest that accrues after the Petition Date), fees, charges, expenses, attorneys' fees and any other sum chargeable to the Debtor under the DIP Facility (the **"Obligations"**).

**DIP Lender:**  Absolutely Zero Corporation (the "**DIP Lender**"), a related party and insider of the Debtor.

**Borrowing Availability:**  All advances under the DIP Facility (collectively, the "DIP Loans") shall be available to the Debtor upon one (1) Business Day's prior written notice by the Debtor to the DIP Lender, unless the Termination Date shall have occurred before any such date.

| | |
|---|---|
| **DIP Loan Documentation** | At the option of the DIP Lender, the Debtor shall execute definitive financing documentation with respect to the DIP Facility, including, without limitation, a credit agreement, a promissory note, and security documents, in each case, satisfactory in form and substance to the DIP Lender ("**Additional DIP Documents**" and together with this Term Sheet, the "**DIP Loan Documentation**"). Any such Additional DIP Documents shall, upon execution, supersede the provisions of this Term Sheet; provided that if the DIP Lender determines not to require the Debtor to execute any Additional DIP Documents, the provisions of this Term Sheet and the Interim Order and the Final Order shall govern the DIP Facility. The provisions of the Additional DIP Documents shall be consistent with this Term Sheet and the Interim Order and the Final Order. |
| **Fees:** | No origination, prepayment or exit fees. |
| **Termination Date:** | The earliest to occur of: (a) fifteen (15) days after the Petition Date if the Interim Order has not been entered, (b) forty (40) days after the Petition Date if the Final Order has not been entered; (c) the occurrence and continuance of any Event of Default (as defined below) beyond the expiration of any applicable cure or grace period; (d) the effective date of a confirmed plan of reorganization or liquidation, which plan shall provide for indefeasible payment in full of all Obligations or is otherwise acceptable to DIP Lender in its reasonable discretion; (e) the date which is the closing date of any 363 Sale; and (f) December 31, 2026 (the "**Maturity Date**"). The date on which the earliest of clauses (a) through (f) above occurs is referred to hereinafter as the "**Termination Date**."  Except as provided in the carve out provisions, upon the occurrence of the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Lender shall have no further obligation to provide financing, all DIP Obligations shall immediately become due and payable to the DIP Lender; and the DIP Lender shall have the right to enforce its rights under this Term Sheet and applicable law in respect of the DIP Obligations and the DIP Collateral; provided, however that nothing in this term sheet shall limit the Debtor's ability to seek to use cash collateral on a non-consensual basis and/or challenge whether a Termination Date has occurred. |
| **Non-Default Interest Rate and Payment Terms:** | Interest on the DIP Facility shall accrue from and after the Petition Date at a per annum rate equal to SOFR (the "Non-Default Interest Rate").  All accrued interest shall be added to the |

outstanding principal balance of the DIP Loans on the last Business Day of each month ("PIK Interest")  with no interest payment obligations until maturity or termination of the DIP Facility . All computations of interest payable hereunder shall be calculated on the basis of a year of 365 days (or 366 days in a leap year), and in each case shall be payable for the actual number of days elapsed (including the first day but excluding the last day). Notwithstanding the foregoing, to the extent any portion of the outstanding principal balance of the DIP Loans is repaid to the DIP Lender from the proceeds of the recovery obtained in connection with the Fraudulent Transfer Action, no interest shall accrue or be payable with respect to such repaid portion of the principal balance.

**Default Interest Rate:** Effective immediately upon the occurrence of the Termination Date, interest on all outstanding Obligations shall accrue at a rate that is 2% per annum in excess of the Non-Default Interest Rate (the "**Default Interest Rate**").

**Loan Payments:** All unpaid principal, interest, fees, costs and expenses on the DIP Facility shall be immediately due and payable in full by the Debtor on the Termination Date, whether at maturity, upon acceleration or otherwise.

**Use of Proceeds:** Proceeds of the DIP Facility shall be used solely for the following purposes, in each case consistent with the Budget: (a) to fund, after application of all other available cash, post-petition operating expenses and working capital needs of the Debtor, including, but not limited to, payment of directors and officers of the Debtor, and payment for any activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930; (b) to pay fees and expenses to the DIP Lender in accordance with this term sheet; (c) to fund the Carve Out Account; (d) to pay fees and expenses of professionals engaged by or for the benefit of the Debtor or the DIP Lender (collectively, "**Professional Fees**"; it being acknowledged and agreed by the DIP Lender that all such Professional Fees are being paid from its collateral, and thus, such payments shall still be made notwithstanding the conversion or dismissal of the bankruptcy case); and (e) to pay certain other costs and expenses of administration of the Chapter 11 Case in the ordinary course of business (or outside the ordinary course of business, provided that the DIP Lender consents thereto in writing (with such consent not to be unreasonably withheld or delayed)).

Proceeds of the DIP Facility or cash collateral, including without limitation the proceeds of the Carve Out, shall not be used by

-3-

any party including any official committee of unsecured creditors (a) to permit the Debtor, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine the validity, perfection or priority of security interests in favor of the Lender or any affiliate of the Lender, (b) to commence, prosecute or defend any claim, motion, proceeding or cause of action against the Lender or any of its affiliates, and each of their respective agents, attorneys, advisors or representatives including, without limitation, any lender liability claims or subordination claims, (c) to commence, prosecute or defend any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtor under the DIP Loan Documentation, or (d) to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure, provided, however, that the limitations in this  paragraph shall not apply to the any fees and expenses incurred by professionals retained by the Debtor related to the Fraudulent Transfer Action (as defined in *Declaration of J. Paul Reddam in Support of the Debtor's Chapter 11 Petition and First Day Pleadings*).

| | |
|---|---|
| **Cash Management Collections and Remittances:** | Debtor shall use a cash management system that is the same as or substantially similar to its pre-petition cash management system. Any material changes from such pre-petition cash management system must be acceptable to the DIP Lender in its commercially reasonable discretion.  The Interim Order and Final Order shall provide the DIP Lender with a valid and enforceable lien and security interest on the cash held in the Debtor's bank accounts. |
| **Super-Priority Administrative Claim:** | Amounts owed by the Debtor to the DIP Lender pursuant to the DIP Facility (including all accrued interest, fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code (the "**DIP Superpriority Claims**"), a claim having priority over any and all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code other than the Prepetition Permitted Liens and Pre-Petition Lender Adequate Protection Claims, which shall be senior in priority to the DIP Superpriority Claim, and in all cases subject and subordinate to payment of the Carve Out. |
| | The foregoing super-priority claim in favor of the DIP Lender shall be payable from all claims or causes of action arising under Chapter 5 of the Bankruptcy Code or any applicable state fraudulent transfer statutes (together, **"Avoidance Actions"**) and the proceeds thereof, to the extent of any principal balance owed. |

-4-

**Collateral Security:**    On the Petition Date, in order to secure the DIP Obligations, the DIP Lender is hereby granted pursuant to and in accordance with Section 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, **enforceable** and fully-perfected security interests in and liens on (the "**DIP Liens**") the DIP Collateral.

"**DIP Collateral**" means all property of the estate under section 541 of the Bankruptcy Code, including all real and personal property, whether now existing or hereafter arising and wherever located, tangible and intangible, of each of the Debtor, including: (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including all of the issued and outstanding capital stock of each of any subsidiaries), hedge agreements, real estate, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles (including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) subject to entry of a Final Order providing for such relief, all avoidance actions brought pursuant to Chapter 5 of the Bankruptcy Code or applicable state law equivalents, together with any proceeds thereof; (c) proceeds from the Debtor's exercise of rights under section 506(c) and 550 of the Bankruptcy Code; (d) all property of the Debtor that was not otherwise subject to valid, perfected, enforceable and unavoidable liens on the Petition Date, and (e) all proceeds from the sale, assignment, or other disposition of (x) any leased real property and (y) the Debtor's right to select, identify, and designate which commercial leases may be assumed and assigned under section 365 of the Bankruptcy Code.

The DIP Liens shall be subject only to validly perfected, enforceable and non-avoidable liens existing as of the Petition Date (the "Prepetition Permitted Liens").

**Lien Validation and Perfection:**    All liens authorized and granted pursuant to the Interim Order or the Final Order entered by the Bankruptcy Court approving the

DIP Facility or with respect to adequate protection, including without limitation the DIP Liens, shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection; provided that the DIP Lender may file any financing statements or other filings to memorialize the DIP Liens as the DIP Lender may desire, and the Debtor shall cooperate with the DIP Lender in connection with any such filings.

**No Release of Claims:** No release is being granted in connection with this DIP Financing.

**Related Party Disclosure and Arm's-Length Terms:** The parties acknowledge that the DIP Lender is a related party and insider of the Debtor as those terms are used in the Bankruptcy Code. The Debtor represents that: (a) the terms of this DIP Facility, including the interest rate, fees, covenants, and other material terms, are at least as favorable to the Debtor as those that could be obtained from an unrelated third-party lender in an arm's-length transaction; (b) the Debtor has made reasonable efforts to obtain alternative financing from unrelated third parties and has determined that such financing is not available on terms equal to or more favorable than those offered by the DIP Lender, and that pursuing such alternative financing would not be in the best interests of the Debtor; and (c) the Debtor's independent director has reviewed and approved the terms of this DIP Facility and determined that entering into this transaction is in the best interests of the Debtor.

-6-

**Adequate Protection:**   As adequate protection for the use of its cash collateral and in consideration for being primed in part by the DIP Lender's claims and liens, to the extent any Pre-Petition Lender exists it (a) shall receive a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and 1114, subject to payment of the Carve Out and subject to the super-priority administrative claims of the DIP Lender under the DIP Facility and existing claims of the Pre-Petition Lender on its pre-petition collateral; and (b) shall have valid, binding, enforceable and perfected replacement liens in all DIP Collateral, subject to payment of the Carve Out and any prepetition liens, in each case equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of its pre-petition collateral resulting from the sale, use, lease or disposition of such pre-petition collateral during the Chapter 11 Case (the **"Pre-Petition Lender Adequate Protection Liens"**).

**Lender's Fees and Expenses:**   The Debtor shall reimburse the Lender for its reasonable attorneys' fees incurred in connection with the negotiation or approval of the DIP Facility or otherwise related to the Debtor's chapter 11 case.

**Conditions Precedent to Interim Draw:**   The closing of the DIP Facility and the funding of the initial draw thereunder shall be conditioned on the satisfaction of the following conditions precedent unless waived by the DIP Lender in its sole discretion:

(a) entry of an Interim Order approving the DIP Facility, the DIP Liens and super-priority administrative claims (subject to the Carve Out) and other liens securing the DIP Facility, and containing such other orders and findings as the DIP Lender may require, including automatic modification of the automatic stay upon the occurrence of an Event of Default hereunder that, upon at least five (5) days' notice to the Debtor, the United States Trustee, and any Committee, results in the DIP Lender exercising certain rights and remedies against the DIP Collateral, which Interim Order shall not have been modified or amended without the approval of the DIP Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Lender in its sole discretion;

(b) continuation of Debtor's present or substantially similar cash management system;

(c) there shall be in place a Budget approved by the DIP Lender;

(d) the Debtor shall have not failed to disclose any material

-7-

assumptions with respect to such Budget;

(e) the Debtor shall have delivered to the DIP Lender a notice of borrowing in connection with such interim draw no later than 11:00 a.m. ET one business day prior to the requested funding date for such interim draw (or such later time as the DIP Lender may agree in its sole discretion);

(f) such interim draw shall be in a maximum amount not to exceed the forecasted amount of cash required to comply with the Budget for the applicable borrowing period;

(g) all of the "first day" motions filed in the Debtor's chapter 11 case and all other pleadings which relate to the DIP Facility shall have been reviewed in advance by the DIP Lender and shall be in form and substance reasonably satisfactory to the DIP Lender;

(h) each of the representations and warranties contained in this term sheet shall be true and correct as of the date of such draw; and

(i) upon entry of the Interim Order, the entry into this Term Sheet shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently.

| | |
|---|---|
| **Conditions Precedent to Subsequent Draws:** | The funding of each subsequent draw under the DIP Facility thereunder shall be conditioned on the satisfaction of the following conditions precedent unless waived by the DIP Lender in its sole discretion: |

(a) entry of a Final Order approving the DIP Facility, the DIP Liens, and super-priority administrative claims (subject to the Carve Out) and other liens securing the DIP Facility, and containing such other orders and findings as the DIP Lender may require, including automatic modification of the automatic stay upon the occurrence of an Event of Default hereunder that, upon at least five (5) days' notice to the Debtor, the United States Trustee, and any Committee, results in the DIP Lender exercising certain rights and remedies against the DIP Collateral, which Final Order shall not have been modified or amended without the approval of the DIP Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Lender in its sole discretion;

(b) continuation of Debtor's present or substantially similar cash management system;

(c) there shall be in place a Budget approved by the DIP Lender;

(d) the Debtor shall have not failed to disclose any material assumptions with respect to such Budget;

(e) the Debtor shall have delivered to the DIP Lender a notice of borrowing in connection with such interim draw no later than 11:00 a.m. ET one business day prior to the requested funding date for such interim draw (or such later time as the DIP Lender may agree in its sole discretion);

(f) such interim draw shall be in a maximum amount not to exceed the forecasted amount of cash required to comply with the Budget for the applicable borrowing period;

(g) the Final Order shall have been entered by the Bankruptcy Court and not have been reversed, modified, amended, stayed, vacated or subject to a stay pending appeal, in whole or in part, in each case without the prior written consent of the DIP Lender, and the Debtor shall be in compliance in all respects with this Term Sheet and the Interim Order;

(h) each of the representations and warranties contained in this term sheet shall be true and correct as of the date of such draw;

(i) the entry into and performance under this Term Sheet shall not violate any requirement of law and shall not be enjoined, temporarily, preliminarily, or permanently; and

(j) all interest, fees and expenses owing to the DIP Lender in connection with the DIP Facility have been paid.

| | |
|---|---|
| **Affirmative and Negative Covenants:** | None. |
| **Representations and Warranties:** | None. |
| **Additional Conditions to Each Borrowing Under the Facility:** | There shall exist no default (or event that would constitute a default with the giving of notice or lapse of time) hereunder, and the representations and warranties herein shall be true and correct in all material respects. |

There shall have occurred no material adverse change in the Debtor's (financial, environmental, or otherwise) operations, performance, or properties (other than, in each case, the commencement and continuation of the Chapter 11 Case), since the date of this term sheet, that in the reasonable judgment of the DIP Lender, has or can reasonably be expected to have a material adverse effect on the rights and remedies of the DIP Lender or on the ability of the Debtor to perform its obligations to them under the DIP Facility.

**Remedies:**

Following the Termination Date and provided that the Bankruptcy Court does not enter any order to the contrary within the notice periods provided herein and in the Interim DIP Order and the Final DIP Order, as applicable, the DIP Lender shall have customary remedies, including, without limitation, the right to realize on all DIP Collateral (which secures the DIP Obligations), the right to exercise any remedy available under applicable law, without the necessity of obtaining any further relief or order from the Bankruptcy Court. Consistent with the foregoing sentence, section 362 relief from the stay in favor of the DIP Lender shall be embodied in any order approving the DIP Facility and the use of cash collateral.

**Events of Default:**

- Entry of an Interim or Final Order in form and substance that is not acceptable to the Lender in its reasonable discretion.

- The Chapter 11 Case shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed, or a motion requesting such relief shall have been filed by any party.

- Filing or support of a proposed plan of reorganization by Debtor that does not provide for the indefeasible payment in full of the DIP Obligations, unless otherwise agreed in writing by Lender in its sole discretion.

- Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Obligations as of the effective date of the plan, unless otherwise agreed in writing by the Lender in its sole discretion.

- Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the Lender, or the filing of any motion or other pleading requesting such relief which the Debtor fails to timely oppose.

- Entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the Lender or the filing of a motion or other pleading requesting such relief which the Debtor fails to timely oppose.

-10-

- Any attempt by Debtor to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the Lender's claims, or to subject any of the Lender's collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- A final order is entered granting any creditor with a claim in excess of $1,000,000 relief from the automatic stay or the right to retain or withhold from payment to the Debtor any asset or collection of assets having a value in excess of $1,000,000.

- Failure to make all payments under the DIP Facility when due.

- Any breach in any material respect of any covenant or obligation set forth in the DIP Facility or any Interim Order or Final Order.

- The Debtor shall take (or support any other Person in taking) any action in order to restrict or prohibit the Lender from submitting a "credit bid" for any assets of the Debtor.

- The Debtor fails to disburse any sale proceeds to the Lender, in accordance with the priority of proceeds set forth herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out.

- The commencement of any suit by any Person that is not subject to the automatic stay against the Lender that would, or seek to, in any way reduce, set off, or subordinate the Obligations or DIP Liens.

- The Debtor shall be denied, or otherwise not obtain or lose authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code.

- Any Person is granted (or awarded) an administrative expense claim in excess of $250,000 that is not subordinated to the super-priority administrative claims granted to the Lender.

- The Debtor seeks to grant a security interest in or lien on any

-11-

of its assets other than the DIP Liens.

- The payment of or application by the Debtor for authority to pay any prepetition claim or other amount without the prior written consent of the Lender other than amounts set forth in the Budget (subject to any Permitted Variance).

- The failure to comply with the Budget (subject to any Permitted Variance).

| | |
|---|---|
| **Governing Law:** | All documentation in connection with the DIP Facility shall be governed by the laws of the state of California, subject to applicable federal bankruptcy laws. |
| **Credit Bid:** | Subject to Section 363(k) of the Bankruptcy Code, the DIP Lender shall have the unqualified right to credit bid up to the full amount of the DIP Obligations in any sale of assets of the Debtor, without the need for further Court order authorizing the same, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise. |
| **Carve Out:** | The liens and claims granted to the DIP Lender and any Pre-Petition Lender in the Interim Order, the Final Order, this term sheet, and/or any related documents are all subject to the Carve Out. |
| **Professional Fee and U.S. Trustee Funding:** | The Debtor shall establish a separate bank account for the sole and exclusive benefit of professionals and/or retained by order of this Court and the U.S. Trustee (the "**Carve Out Account**"). All funds in the Carve Out Account, shall be maintained in such account, subject to be used by the Debtor solely to the extent necessary to make payment of fees due to the U.S. Trustee and, with respect to professional fees and expenses, as permitted by Court order. |
| | At the end of each calendar week, the Debtor shall deposit into the Carve Out Account, the amount set forth in the Budget for all professionals, officers, and the U.S. Trustee. |
| **Other Definitions:** | "**Bankruptcy Code**" means Title 11 of the United States Code (11 U.S.C. § 101 et seq.), as amended. |
| | "**Budget**" means the weekly cash flow budget delivered by the Debtor to the DIP Lender and approved by the DIP Lender, as the same may be updated, amended or modified from time to time with the prior written consent of the DIP Lender. |
| | "**Business Day**" means any day other than a Saturday, Sunday or |

-12-

other day on which commercial banks in San Diego, California are authorized or required by law to close.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of California presiding over the Chapter 11 Case.

**"Carve Out"** means:

(a)  unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee as agreed to by the U.S. Trustee or as determined by the Court;

(b)  the unpaid postpetition fees and expenses of the professionals and/or officers retained by the Debtor and by any Committee (up to a maximum of $25,000 in the case of any professionals retained by the Committee), whose retentions are approved pursuant to final orders of the Court under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the **"Professionals"**), but only to the extent that such fees and expenses are (i) incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Lender to the Debtor and any Committee, (ii) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iii) not otherwise paid from retainers;

(c)  Fees of the Independent Director;

(d)  Fees of the Chief Restructuring Officer;

(e)  All other administrative expenses incurred by the Debtor, prior to the Lender's transmission of notice of the Termination Date, in connection with Debtor's operations;

(f)  Fees incurred by the Professionals and/or officers (i) of the Debtor, up to $250,000 and (ii) an official committee appointed by the Court, up to $25,000, after the Lender's transmission of notice of the Termination Date, to the extent such fees and expenses are (i) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from any retainers; provided that such notice of Termination Date is not rescinded or withdrawn; and

(g)  all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code in an aggregate amount not exceeding $50,000.

-13-

**"Chapter 11 Case"** means the voluntary Chapter 11 case to be commenced by the Debtor in the Bankruptcy Court.

"**Committee**" means any statutory committee appointed in the Chapter 11 Case.

"**Contractual Obligations**" means, as applied to any Person, any indenture, mortgage, deed of trust, contract, undertaking, agreement or other instrument to which that Person is a party or by which it or any of its properties is bound or to which it or any of its properties is subject.

"**DIP Facility Documents**" means collectively this term sheet and all documents by and among the Debtor and DIP Lender relating to the DIP Facility, all of which such documents shall be in form and substance satisfactory to the DIP Lender in its sole discretion.

"**DIP Obligations**" means all Obligations arising under or in connection with the DIP Facility.

"**Final Order**" means a final, non-appealable order of the Bankruptcy Court, that, without limitation, approves the DIP Facility and grants the liens and security interests contained therein, on terms satisfactory to the DIP Lender in its sole discretion.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof, and any agency, department or other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"**Interim Order**" means an interim order of the Bankruptcy Court authorizing the Debtor, among other things, to obtain interim financing and incur post-petition indebtedness on terms satisfactory to the DIP Lender in its sole discretion.

"**Person**" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"**Permitted Variance**" means a variance of up to 20 percent (20%) from the amounts set forth in the Budget for any applicable measurement period.

"**Petition Date**" means the date on which the Chapter 11 Case

for such Debtor was filed with the Bankruptcy Court.

**"Requirement of Law"** means, as to any Person, the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

**"Sale"** means a sale of all or substantially all of the Debtor's assets.

The Debtor and the Lender consent to the exclusive jurisdiction and venue of the state or federal courts located in the Southern District of California. Each party hereto irrevocably waives, to the fullest extent permitted by applicable law, (a) any right it may have to a trial by jury in any suit, action, claim, counterclaim or other proceeding arising out of or relating to this letter agreement or the transactions contemplated hereby (whether based on contract, tort or any other theory) or the performance of services hereunder and (b) any objection that it may now or hereafter have to the laying of venue of any such legal proceeding in the state or federal courts located in the Southern District of California.

This term sheet embodies the entire agreement among the parties hereto and supersedes all prior commitments, agreements, representations, and understandings, whether oral or written, relating to the subject matter hereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto. All Exhibits, Schedules and Annexes referred to herein are incorporated in this term sheet by reference and constitute a part of this term sheet. This term sheet and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all of which counterparts together shall constitute but one and the same instrument. This term sheet shall become effective upon the execution of a counterpart hereof by each of the parties hereto.

If the Debtor is in agreement with the foregoing, please sign this term sheet and return it to the Lender by no later than close of business on July 23, 2026. This letter shall terminate if not so accepted by you prior to that time.

Very truly yours,

ABSOLUTELY ZERO CORPORATION as DIP Lender

By: _____
Name: J. Phu Reddm
Title: President

-15-

Scanned with
CamScanner

-16-

ACCEPTED AND AGREED TO:
CASHCALL, INC.


By: _____
Name:
Title: