CHRISTINA S. COLL (CA Bar #250712)
christina.coll@cfpb.gov
CONSUMER FINANCIAL PROTECTION BUREAU
445 12th Street, SW
Washington, DC 20024-2101
Telephone: (202) 309-9704
Facsimile: (202) 435-5468

Attorney for Creditor
Consumer Financial Protection Bureau

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

In re:

CashCall, Inc.

　　　　　Debtor-in-Possession.

CASE NO.: 26-03102-JBM11

**CREDITOR CONSUMER FINANCIAL PROTECTION BUREAU'S OPPOSITION TO DEBTOR'S FIRST DAY MOTIONS**

Date:
Time:
Dept:　　　　Two (2)
Judge:　　　J. Barrett Marum

On July 20, 2026, CashCall Inc., the Debtor-in-Possession (Debtor) filed various First Day Motions and Supporting Declarations. In its petition for relief, the Debtor identified the Consumer Financial Protection Bureau (Bureau) as its second-largest creditor with a claim of more than $150 million. Docket No. 1 at 6. Debtor's motions raise multiple concerns, including self-dealing, and the Bureau concurs with the UST's Opposition. *See* UST's Omnibus Opposition to Debtor's First Day Motion, Dkt No. 15. These motions raise additional issues that show CashCall's callous disregard for its obligations and the rules governing its conduct, in this matter and other cases.

1

In particular, the Bureau is concerned by CashCall's attempt to obtain super-priority status for an insider in order to fund a bankruptcy that does not appear to have any legitimate purpose in reorganizing. The Debtor is not currently operating any business, has no employees, and has not indicated what business it intends to undertake if reorganized. Nor is it apparent how such reorganization would be in the best interest of creditors.

It appears that the Debtor, whose sole shareholder is J. Paul Reddam, is considering pursuing a fraudulent transfer claim against Reddam. And it proposes financing this bankruptcy by providing super-priority status to a post-petition DIP lender—Absolutely Zero Corporation, which is also solely owned by Reddam. This proposed arrangement reeks of self-dealing and improper attempts to avoid the significant judgments against the Debtor.

Background

The Consumer Financial Protection Bureau obtained a judgment against the Debtor, J. Paul Reddam, WS Funding, LLC, and Delbert Services Corporation in the long-running litigation *CFPB v. CashCall, Inc.,* Am. J., No. 2:15-cv-07522-JFW (C.D. Cal. Feb. 21, 2023) (ECF No. 374). This judgment, which holds the defendants jointly and severally liable, orders payment of a $22,992,378 civil penalty, $134,058,600 in restitution, and post-judgment interest pursuant to 28 U.S.C. § 1961. *Id.* As of this filing, accrued post-judgment interest totals more than $25,000,000.

Following the district court's judgment order, the parties negotiated a security package to stay the execution of the judgment so the defendants could appeal. *CFPB v. CashCall, Inc.,* Joint Stip., No. 2:15-cv-07522-JFW (C.D. Cal. July 19, 2023) (ECF No. 405). The security package consists of a Pledged Account funded initially with $124,490,978. *Id.* at 2. The security package also includes deeds of trust for properties appraised in 2023 for a total value of $40.7 million. *Id.* The Pledged Account currently

2

CREDITOR CONSUMER FINANCIAL PROTECTION BUREAU'S
OPPOSITION TO DEBTOR'S FIRST DAY MOTIONS

holds approximately $144M in assets. *See Merchants Bank of Indiana v. CFPB, et al.*, Compl. in Interpleader at 1, No. 2:26-cv-7259 (C.D. Cal. July 2, 2026) (ECF No. 1).

The Pledge Agreement for the Pledged Account states that Absolutely Zero Corporation, an entity owned in full by J. Paul Reddam, pledged to the CFPB and granted to the CFPB "a security interest in, a lien upon all of the Pledgor's right, title and interest in" the Pledged Account at Merchants Bank of Indiana. *CFPB v. CashCall, Inc.,* Joint Stip. Ex. 1 at 2, No. 2:15-cv-07522-JFW (C.D. Cal. July 19, 2023) (ECF No. 405-1).

After 13 years of litigation, including appeals to the Ninth Circuit and a certiorari petition to the Supreme Court, which the Court denied on March 2, 2026, the judgment became final. Under the Pledge Agreement, the Bureau could start collecting on the judgment 60 days after the certiorari denial. *See CFPB v. CashCall, Inc.,* Joint Stip. Ex. 1 at pg. 4, ¶ 8, No. 2:15-cv-07522-JFW (C.D. Cal. July 19, 2023) (ECF No. 405-1). Accordingly, the Bureau contacted Merchants Bank on June 11, 2026, to obtain the funds in the Pledged Account, as set forth in the terms of the Pledged Account Control Agreement. *See CFPB v. CashCall, Inc.,* Joint Stip. Ex. 2, No. 2:15-cv-07522-JFW (C.D. Cal. July 19, 2023) (ECF No. 405-2).

Unwilling to accept that all appeals have been exhausted and the judgment was indeed final, defendants filed a motion for relief from the judgment under Fed. R. Civ. P. 60(b) on July 8, 2026, which remains pending. The Bureau will file its opposition to that motion in August, as there is no basis for setting it aside.

Putting aside utter lack of merit to the Rule 60(b) motion, the filing of a Rule 60(b) motion does not stay collection of a final judgment, *see* Fed. R. Civ. P. 60(c)(2). But in yet another attempt to avoid paying the court-ordered judgment, the defendants instructed Merchants Bank not to pay the Bureau, claiming the pending Rule 60(b) motion constituted a legitimate dispute regarding the funds. *See Merchants Bank of Indiana v. CFPB, et al.*, Compl. in Interpleader at 10-11, No. 2:26-cv-7259 (C.D. Cal. July 2, 2026) (ECF No. 1). Merchants Bank filed an interpleader action in the C.D. Cal. on

CREDITOR CONSUMER FINANCIAL PROTECTION BUREAU'S
OPPOSITION TO DEBTOR'S FIRST DAY MOTIONS

July 2, 2026, which remains pending. *Id.* The Bureau plans to file its response, explaining that Rule 60(c)(2) is crystal clear that CashCall's filing of Rule 60(b) motion does not relieve the bank of the responsibility to pay out on the final judgment.

<u>DIP Financing Motion Is Neither Exigent</u>

<u>Nor Has Any Foundation In This Self-Dealing Context</u>

Among its First Day Motions, Debtor filed a "First Day Motion for Interim and Final Orders (I) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling Final Hearing." Dkt No. 5 (DIP Financing Motion). The Bureau opposes that motion.

As an initial matter, the DIP Financing Motion fails to explain the exigency of the motion. The Debtor is not currently operating, has no employees, and is seeking to reject its outstanding lease. It is unclear what operational expenses necessitate immediate consideration of the motion, with a hearing scheduled on less than three days' notice.[1]

The DIP Financing Motion asserts that "is essential to fund the operations of this chapter 11 case and avoid irreparable harm to the Debtor's estate." Dkt No. 5, pg. 2, line 16. The assertion is puzzling given that the Debtor is seeking financing that far exceeds the estimated value of the estate's assets – almost $4 million of financing, compared to assets valued at $1.5 million. Rather than avoid irreparable harm to the estate, this transaction would completely deplete the estate.

Given the amount of requested financing, which far exceeds the estimated assets of the estate, the failure to provide adequate notice to affected parties, and the lack of clarity regarding why the funding is needed or how it would benefit the estate, the DIP Financing Motion should be denied.

Even if the need for post-petition DIP financing were established, the Debtor fails to meet the standard for awarding super-priority status to the proposed financing. Post-

---

[1] The Bureau has not had a sufficient opportunity to fully review the details of the proposed DIP financing and may have additional objections upon further review.

4

CREDITOR CONSUMER FINANCIAL PROTECTION BUREAU'S
OPPOSITION TO DEBTOR'S FIRST DAY MOTIONS

petition DIP financing is governed by section 364 of the Bankruptcy Code. Courts may grant super-priority status to DIP financing, but only if the debtor-in-possession cannot obtain such credit on more favorable terms from sources other than the DIP lenders and there is adequate protection to any existing lienholders. 11 U.S.C. § 364(d).

The Debtor argues the transaction should be approved as falling within the reasonable business judgment of the Debtor, citing numerous cases for that proposition. Dkt No. 5 at 13-14, ¶ 19. The Debtor fails to inform the Court about caselaw holding that the reasonable business judgment analysis does not apply to transactions involving insiders. *See In re Spac Recovery Co.*, 676 B.R. 260, 273 (Bankr. S.D.N.Y. 2026) and cases cited therein.

Instead, courts apply a heightened scrutiny to transactions involving insiders, examining "the integrity and entire fairness of the transaction at issue." *In re Spac Recovery Co.*, 676 B.R. at 269 (citing *Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010)). The Debtor does not dispute that the DIP financing involves an insider as the lender, but makes no attempt to address the overall fairness of the transaction or its impact on creditors. Conclusory characterizations such as "much needed funding," *see* Dkt No. 4 at 14 (Gladstone declaration), are insufficient.

The Debtor's motion and related filings make clear there is no current plan that would benefit creditors. Instead the filings indicate they are working to develop a "framework" and need these funds to develop a "strategy." *See* Dkt No. 4 at 10 (Gladstone declaration).

The need to spend $4 million to develop a strategy for a non-operating business, with only $1.5 million in estimated assets, appears to be a need to enable the Debtor, through its insider, to carve out all the estate's assets for itself, leaving nothing for creditors. This cavalier approach, however, is in line with CashCall's other maneuvers, aimed at using any tricks it can come up with to avoid paying its creditors, including on a court-ordered final judgment. Just like CashCall is disregarding that Rule 60(b) does not

5

CREDITOR CONSUMER FINANCIAL PROTECTION BUREAU'S
OPPOSITION TO DEBTOR'S FIRST DAY MOTIONS

stay execution of a judgment, CashCall is disregarding here the test for insider transactions and that it plainly cannot meet it.

Cash Management Motion Is Not Well-Founded

In addition to the DIP Financing Motion, the Bureau opposes the First Day Motion for Interim and Final Orders (I) Authorizing the Debtor to (A) Continue Using Its Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms; (II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief Filed. Dkt No. 7. The Debtor's motion and related filings include no explanation as to why it cannot set up DIP accounts in the ordinary course and handle the collections account in the manner suggested by the UST, nor does it explain why the Debtor should be allowed to use a pre-existing credit card. This appears to be another instance of the Debtor attempting to invoke the protections of the Bankruptcy Code, while avoiding the corresponding burdens of doing so. The Bureau joins the arguments made in the UST's Opposition. Dkt No. 15 at 3-6.

Conclusion

The First Day Motions filed by the Debtor in this case ask the Court to enter orders that would significantly impact this case, and to decide those matters on an expedited basis with no articulated reason for the exigency. This Court should decline to do so.

Dated: July 23, 2026

Respectfully submitted,

 /s/ Christina S. Coll

Christina S. Coll (CA Bar #250712)
Consumer Financial Protection Bureau
445 12th Street, SW
Washington, DC 20024-2101
Telephone: (202) 309-9704
Facsimile: (202) 435-5468

Attorney for Creditor
Consumer Financial Protection Bureau

6

CREDITOR CONSUMER FINANCIAL PROTECTION BUREAU'S
OPPOSITION TO DEBTOR'S FIRST DAY MOTIONS